Gen. 341]                                                                                    341

**TORTS**

IMMUNITY — EFFECT OF FEES CHARGED BY MUNICIPAL
      AMBULANCE SERVICE ON GOOD SAMARITAN LAW
      IMMUNITY

June 9, 1995

*The Honorable Alfred A. Hopkins*
*Mayor of Annapolis*

You have requested our opinion whether a proposed ordinance establishing fees for ambulance services provided by the Annapolis Fire Department would jeopardize the immunity provided under §5-309 of the Courts and Judicial Proceedings ("CJ") Article, Maryland Code.

For the reasons stated below, we conclude that, because the proposed ordinance would impose a fee on a victim for emergency assistance and medical care, enactment of the ordinance would result in the loss of immunity under CJ §5-309.

**I**

**The Proposed Ordinance**

Under current city law, a $25 fee is charged when an ambulance is used "for routine transportation for nonemergency service." §2.32.110 of the Annapolis City Code. The full text of this provision is as follows: "An ambulance generally shall not be used for routine transportation for nonemergency service, but when the service is provided the fee shall be twenty-five dollars."

Ordinance No. O-81-94 was introduced for "the purpose of revising the fees for ambulance service." The ordinance would charge fees "to any person who utilizes ambulance services provided by the Annapolis Fire Department." The fee would be $100 "for basic life support … transport and all other ambulance services other than advance life support ... transports." The fee would be $290 if the transport involved advanced life support.

Both basic life support and advance life support, as defined in the proposed ordinance, involve the provision of emergency medical care. Basic life support includes "patient assessment, control of bleeding, splinting of fractures, treatment of shock, spinal immobilization, oxygen administration, CPR, obstetrical delivery, and the management of medical and environmental emergencies." Advance life support includes all of these services plus "administration of medication, intravenous fluids, cardiac monitoring, telemetry, cardiac defibrillation, endotracheal intubation, relieving pneumothorax conditions and other advanced techniques as approved by the Maryland Board of Physician Quality Assurance."

The proposed ordinance imposes on the City's Director of Finance the responsibility to collect the fees.[1]  All of the fees "shall be used to support the City of Annapolis Emergency Medical Services."

## II

### Fees For Emergency Services and Immunity Under CJ §5-309

The current version of Maryland's original "Good Samaritan" immunity provision is set out in CJ §5-309(a):

> A person described in subsection (b) of this section is not civilly liable for any act or omission in giving any assistance or medical care, if:
>
> (1) The act or omission is not one of gross negligence;
>
> (2) The assistance or medical care is provided without fee or other compensation; and
>
> (3) The assistance or medical care is provided:

---

[1] The Director may waive a fee "upon satisfactory proof of indigency."

(i)  At the scene of the emergency;

(ii) In transit to a medical facility; or

(iii) Through communications with personnel providing the emergency assistance.

This immunity applies to municipal ambulance personnel, among others. CJ §5-309(b)(2). *See also* CJ §5-310 (affording immunity to governmental personnel who provide "support to the emergency medical system by giving care, equipment, facilities, or consultation, if, among other things, "[t]he service is provided without fee to the emergency victim"). The reference to emergency assistance or medical care "provided without fee or other compensation" is derived from the original Good Samaritan law, then applicable only to physicians. *See* Chapter 65 of the Laws of Maryland 1963.

The only completely settled issue regarding the "no compensation" provision is "that absent a charge to the victim by the person who is seeking immunity, salaried personnel do not receive 'compensation' within the meaning of this section." *Tatum v. Gigliotti,* 80 Md. App. 559, 568, 565 A.2d 354 (1989), *aff'd*, 321 Md. 623, 583 A.2d 1062 (1991). Thus, a salaried paramedic was entitled to assert immunity under what is now CJ §5-309.

This office has addressed the effect of fees on immunity several times. A 1976 letter[2] discussed "the status of volunteer fire company and/or rescue squad personnel under the State's revised Good Samaritan Laws in situations where a charge is imposed for ambulance services." The statute at the time granted immunity for emergency "medical aid, care, or assistance" for which the provider charged "no fee or compensation." Former Article 43, §132(a). The 1976 letter differentiated between a fire company's charge for the use of its ambulance, which would not lead to the loss of individual immunity, and a charge for the medical services, which would:

> In our view, [the pertinent language] means that no charge may be imposed for the aid, care or assistance which the individual

---

[2] Under the practice at the time, this letter was labeled an "Opinion of the Attorney General," although only a single Assistant Attorney General signed it; the Attorney General did not. Opinion No. 76-167 (September 16, 1976) (unpublished). Such a letter would not be regarded as an Opinion of the Attorney General under current practice.

> provides in order for him to be protected. We do not believe that his individual protection would be lost, however, simply because the fire company or rescue squad imposes a charge for the use of its ambulance so long as no charge is imposed by the individual or the agency for the aid received from the individual seeking protection of the statute.

Opinion No. 76-167, at 2. This portion of the 1976 letter rested on a precarious premise: that the "use of [an] ambulance" is distinct from "medical aid, care, or assistance," for purposes of cost-shifting. The letter did not explain why the use of an ambulance to provide speedy transportation to a hospital is not itself part of "medical ... assistance" in an emergency, nor did it explain how a cost component for ambulance use can be separated from the overall cost of providing a range of pre-hospital care.

In 1979, Attorney General Sachs issued the first true Opinion of the Attorney General on this subject. The opinion concluded that immunity under the predecessor of CJ §5-309 was not lost merely because an ambulance company paid a salary to its paramedics. 64 *Opinions of the Attorney General* 175 (1979).[3] As the opinion explained, "the whole statutory scheme reflects the principle that, if the victim is charged for the help by the person seeking immunity, then no immunity is available under the Good Samaritan Law; but, if the victim is not charged by the one rendering the assistance and seeking immunity, then even a salaried employee is entitled to immunity absent gross negligence." 64 *Opinions of the Attorney General* at 177.

The opinion went on to assume, without further analysis, that the 1976 letter was correct in its treatment of certain charges imposed by a rescue squad: "Indeed, a member of a volunteer rescue squad — as distinguished from the squad itself — would be entitled to immunity even if, for example, the rescue squad imposes a charge to cover the costs and expenses incurred by it." *Id.*[4] The opinion elaborated as follows:

---

[3] This conclusion was later affirmed in *Tatum v. Gigliotti.*

[4] We take it that the phrase "costs and expenses" was intended to be synonymous with the earlier letter's phrase, "a charge for the use of [the] ambulance."

> We understand that no charge is imposed by the members of the squad who render assistance and that the only charge made by the squad is for reimbursement of the costs incurred by the squad in providing its services. We assume, therefore, that the system of charges by the squad is not designed to compensate any of its members for their role in rendering the assistance in question, *nor does it include any fee (beyond a charge for costs and expenses incurred) for the emergency assistance itself.*

64 *Opinions of the Attorney General* at 179 n.6 (emphasis added).

In 1987, this office once again revisited the issue of fees. In Opinion No. 87-055 (November 17, 1987) (unpublished), the issue was "whether CJ §5-309 applies to volunteer firemen who operate an ambulance service and who receive monetary consideration for their services. This issue also gives rise to the related question of whether CJ §5-309 applies to a fire company or rescue squad that itself receives monetary consideration for its services." Opinion No. 87-055, at 1.

The opinion reaffirmed Attorney General Sach's conclusion (later endorsed in *Tatum v. Gigliotti*) that a payment of compensation to the members of the volunteer company would not forfeit immunity: "This interpretation of the compensation requirement renders CJ §5-309 applicable to ambulance service personnel receiving stipends from local fire departments or municipalities, assuming that they satisfy the other statutory conditions for immunity. The Good Samaritan Law would protect them regardless of whether their stipends were intended as cost reimbursements, as long as the stipends did not come from the recipients of their services." Opinion No. 87-055, at 4.

The 1987 opinion then went on to conclude that "ambulance companies charging membership fees and billing nonmembers for individual calls do not qualify for immunity under CJ §5-309.... CJ §5-309 does not apply to a company if its fees are collected directly from the recipients of the ambulance services." *Id.* In its statement of the factual background, the opinion described certain ambulance companies as "offer[ing] residents of a service area the option of paying an annual membership fee or paying for individual ambulance calls." Opinion No. 87-055, at 2. The opinion did not

attempt to differentiate, as had the 1976 letter and the 1979 opinion, between the portion of the fee attributable to medical care and the portion attributable to the use of the ambulance. If an ambulance company charged the fee, the opinion concluded, the company would lose its immunity.[5]

Finally, a 1991 opinion suggested that "the charging of a fee makes Good Samaritan immunity unavailable to the employees of an organization that charges a fee." 76 *Opinions of the Attorney General* 95, 102 (1991). This last opinion did not attempt to parse the nature of the "fee" that would result in the loss of immunity.

The 1987 and 1991 opinions did not pursue the distinction first drawn in the 1976 letter for a good reason: There are significant conceptual and practical problems in attempting to distinguish between a fee for the use of an ambulance as a mode of transportation and a fee for "assistance or medical care." When emergency medical services personnel respond to an emergency call, they provide both "medical care" to stabilize the victim and "assistance" in the form of fast transportation to an emergency room or trauma center.[6] The very act of transporting a victim in an emergency appears to be "assistance" that is to be rendered "without fee or compensation." CJ §5-309(a)(2).

Moreover, even if the transportation component of emergency ambulance service were outside the Good Samaritan Law's ban on charging fees, as a practical matter reckoning the fee without being arbitrary would be difficult. How would one calculate, for example, the portion of salary or equipment costs that is attributable to the use of the ambulance but not the emergency assistance?

Given the terms of Ordinance No. O-81-94, however, we need not consider whether an ambulance service could ever successfully thread the needle of cost-shifting under CJ §5-309: that is, retain Good Samaritan immunity under CJ §5-309 while charging some

---

[5] Nevertheless, the opinion suggested that the charging of these fees might not "preclud[e] the squad's individual members from qualifying for immunity." Opinion No. 87-055, at 5 n.4.

[6] Precisely because speedy transportation is crucial to the medical well-being of the victim, the personnel who drive an ambulance are given the privilege to ignore otherwise applicable vehicle laws. *See* §§21-106 and 22-218(c) of the Transportation Article, Maryland Code.

costs to the victim. The proposed ordinance surely does not do so. Under any analysis, the charges contemplated by the ordinance exceed those reasonably related to the mere use of the ambulance and instead cover the cost of the emergency medical services provided to the patient while at the scene or en route. This medical care would not be provided "without fee or compensation," and the immunity would be lost.

### III

### Scope of Immunity Under CJ §5-309.1

A subsequently enacted immunity provision, CJ §5-309.1(a), provides as follows: "Notwithstanding any other provision of law, except for any willful or grossly negligent act, a fire company or rescue company, and the personnel of a fire company or rescue company, are immune from civil liability for any act or omission in the course of performing their duties." As we stated in a prior opinion, "this grant of immunity imposes no conditions with respect to receipt of any type of compensation." Opinion No. 87-055, at 6. If CJ §5-309.1 were applicable to municipal fire departments, the issue posed in your request − the effect on immunity under CJ §5-309 of compensation for emergency medical services − would be moot.

The City Attorney has expressed doubt, however, that CJ §5-309.1 applies to municipal fire departments, and we share that doubt. As we discussed in our prior opinion, "[t]he history of [CJ §5-309.1] indicates that it constituted the legislative response to a decision by the Court of Special Appeals holding that volunteer fire companies are not considered governmental entities entitled to immunity, and that volunteer firemen are not public officials for the purpose of qualified immunity." Opinion No. 87-055, at 6 n.6. When the bill was introduced, it expressly limited the grant of immunity to "volunteer" fire companies. *See* Senate Bill 731 of the 1983 Session. According to the hearing summary of the Senate Judicial Proceedings Committee, "the purpose of this bill is to protect volunteer fire departments from liability arising from suits which do not involve acts of gross negligence." The committee then adopted an amendment that deleted the original provisions and extended the immunity to fire and rescue companies, without the modifier "volunteer." Nevertheless, even after the amendment, the committee identified the "background" problem as the fact that "few people would volunteer to serve the fire departments, if they realized that

they could be subject to liability for their acts." Furthermore, the bill as enacted contained language relating to the negligent operation of motor vehicles that suggests a focus on non-governmental fire and rescue companies.

Perhaps the courts will give substantial weight to the deletion of the term "volunteer" and hold CJ §5-309.1 to be applicable to governmental fire and rescue companies. *See Tatum v. Gigliotti*, 321 Md. at 629-30. However, the context suggests otherwise. Given these doubts about the applicability of CJ §5-309.1 to a municipal fire department, the City would be taking a significant risk were it to rely on immunity under this section as a basis for proceeding with Ordinance O-81-94.

## IV

### Conclusion

In summary, it is our opinion that, because Ordinance No. O-81-94 imposes fees for emergency assistance and medical care, the ordinance would jeopardize the immunity otherwise afforded under CJ §5-309.[7]

> J. Joseph Curran, Jr.
> *Attorney General*
>
> Jack Schwartz
> *Chief Counsel*
>   *Opinions & Advice*

*Editor's Note:*

The provisions discussed in this opinion have been recodified within the Courts Article. Former §5-309 is now §5-603. Former §5-309.1 is now §5-604. The latter provision was held by the Court of Appeals to be applicable to municipal fire department personnel. *Mayor & City Council of Baltimore v. Chase*, 360 Md. 121, 756 A.2d 987 (2000).

---

[7] We have not been asked, and therefore do not address, questions of immunity or liability under the Local Government Tort Claims Act, CJ Title 5, Subtitle 4. Nor do we express a view concerning immunity in relation to the current ambulance fee ordinance in Annapolis. *See* Part I above.